# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DELVARIS BOOKER,

                Plaintiff,

v.

JOHNSONVILLE SAUSAGE LLC,

                Defendant.

Case No. 16-CV-1047-JPS

**ORDER**

Plaintiff Delvaris Booker ("Booker") filed this action against his former employer, Defendant Johnsonville Sausage LLC ("Johnsonville"), complaining of racial discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964. *See* (Docket #1). On June 29, 2017, Johnsonville filed a motion for summary judgment as to all of Booker's claims. (Docket #34). For the reasons stated below, it will be granted.

**1.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented

or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. RELEVANT FACTS

### 2.1 Plaintiff's Failure to Dispute the Material Facts

The relevant facts are undisputed because Booker did not dispute them. In connection with its motion, Johnsonville filed a supporting statement of material facts that it asserted were not in dispute. In response, Booker filed a one-page motion requesting denial of Johnsonville's motion and his own five-page statement of material facts with accompanying exhibits. (Docket #41, #42).

Federal Rule of Civil Procedure 56 and Civil Local Rule 56 describe in detail the form and contents of a proper opposition to a motion for summary judgment. In particular, Local Rule 56 mandates that a party opposing summary judgment must file

> a concise response to the moving party's statement of facts that must contain:
>
> (i) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon, and
>
> (ii) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph. A non-moving party may not file more than 100 separately-numbered statements of additional facts[.]

Civ. L. R. 56(b)(2)(B). The Rule warns that "[t]he Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." *Id.* 56(b)(4). Similarly, Federal Rule of Civil Procedure 56 provides that a party seeking to dispute an asserted fact must cite to specific materials in the record which support such a dispute. Fed. R. Civ. P. 56(c). If the party fails to do so, the Rule permits the court to deem the fact undisputed. *Id.* 56(e)(2).

These rules provide for the orderly disposition of cases "by ensuring that the proposed findings of fact are in a form that permits the district court to analyze the admissible evidence supporting particular factual propositions and determine precisely what facts, if any, are material and disputed." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). They are not "hyper-technical" and they do not turn litigation into a game of skill. *Id.* Instead, they provide "plain instructions" designed to "assist the court by organizing the evidence, identifying undisputed facts, and. . .imposing some discipline on the pretrial process." *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999).

Booker ignored these rules, foisting onto the Court the task of reviewing the evidence for anything that might rebut Johnsonville's proffered facts. However, "district courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing.").

In reviewing applications of a district court's local summary judgment rules, the Seventh Circuit has "repeatedly held that requiring strict compliance with [such rules] is not an abuse of the district court's discretion." *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016); *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 671–72 (7th Cir. 2006). Indeed, even in cases brought by *pro se* plaintiffs, the Court is entitled to strictly enforce the rules regarding summary judgment procedure. *See Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006). Consequently, the Court finds that Booker has not complied with the requirements of Local Rule 56 and it deems admitted each of Johnsonville's statements of material fact. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4).

### 2.2 Facts Material to the Disposition of Defendant's Motion

Booker is African-American. He began his employment with Johnsonville in January 2015. Robert Roska ("Roska") was part of the team that interviewed Booker and recommended him for employment. Booker initially worked in the smoking department and Roska was his supervisor.

At first, Booker was employed on a part-time basis. In July 2015, he applied for a Front of the Line Operator position. He was interviewed for that position by Kim Westphal ("Westphal") and other members of her team. In addition to Booker, two other employees applied for that position: Jake Daniels ("Daniels") and Ashley Upson, who were both Caucasian. Daniels was awarded the position because he was the most qualified applicant; he had been performing functions of that position in a back-up role and, as such, had actual experience doing the job.

During Booker's interview for this new position, Westphal asked him whether he would be interested in a position in "PACK," the packaging department at Johnsonville. He stated that he would. During the course of

the interview, Westphal explained the job duties of the Front of the Line Operator position. She stated that the position involves a lot of math. At no time did she ever state that the position in PACK was "mindless," as Booker has alleged in his complaint.

Although he did not get the job as Front of the Line Operator, Booker was hired into the PACK position. This was a promotion; he went from part-time employment to full-time and received an increase in pay. The decision to hire Booker for the PACK position was made in late July 2015, but he did not start the new job until August 9, 2015. Accordingly, there were approximately two weeks in which Booker remained employed in the smoking department before being moved to his new job in PACK. During that 2-week lame-duck period, Roska stopped training Booker in the smoking position because he knew that Booker would be leaving that position. To Roska's mind, it would have been a waste of time to continue to train Booker in a job that he no longer would be performing.

On Friday, August 6, 2015, Booker became frustrated because he had not yet been moved over to his new job in PACK. He abruptly left work with more than four hours left on his shift. Initially he was assessed an attendance point for doing so, but the human resources department later removed that attendance point from his record. The following Monday, August 9, 2015, Booker started in his new position in PACK. His supervisor in that department was Westphal.

On September 8, 2015, Booker was tardy to work and was assessed half an attendance point by Westphal. Westphal and Booker had a conversation on that date about the attendance point, during which Booker learned that he had been assessed three attendance points while working

for Roska. Booker was upset that Roska had assessed him these attendance points.

On that same date, Booker brought an internal complaint of race discrimination against Roska. In the complaint, Booker alleged that because of his race, Roska assessed him the attendance points, failed to train him, and once referred to him as a "boy." Booker submitted his internal complaint by email on the evening of September 8, 2015.

The very next day, Johnsonville management and human resources personnel launched an investigation. First, they met with Booker to gather more information regarding the nature of his complaint. Consistent with his complaint, he reported that his major concerns were that Roska allegedly had improperly assessed him attendance points, refused to train him, and that Roska had used the phrase "boy" in addressing him.

That same day, the investigation team met with Roska to obtain his side of the story. Roska denied calling Booker "boy." Roska explained on the occasion in question, Booker had done a good job on a work-related task and Roska patted him on the back and said "atta boy." During his deposition, Booker conceded that it was possible that the phrase that Roska used was "atta boy" and not "boy."

During the course of the internal investigation, Chris Lund ("Lund"), a human resources representative, researched the attendance points that Roska had assessed to Booker. Lund found that the attendance points were properly assessed and that similarly situated Caucasian employees supervised by Roska also had been assessed attendance points for similar misconduct. Booker admitted in his deposition that he could not actually identify any of his attendance points that were wrongfully assessed.

Despite finding no evidence of race discrimination, the Johnsonville management team put in place an action plan to deal proactively with Booker's concerns. The details of the plan are not provided. However, Johnsonville notes that when the management team met with Booker to go through the action plan, he stated that it was "awesome."

On February 10, 2016, Westphal conducted a meeting with employees on her team. During that meeting, Booker sat in the back of the room wearing sunglasses. Westphal jokingly asked Booker why he was wearing sunglasses, to which he responded that "these are my sucker free glasses, they allow me to see through people."

During that same meeting, Booker made an analogy to his coworkers about a lion attacking gazelles. The precise words are not recorded, but in effect he said that a lion can come across as passive to gazelles and then turn around and attack them. After the February 10 meeting had concluded, three of Booker's coworkers prepared written complaints about his behavior at the meeting. These coworkers felt threatened by Booker's reference to a lion attacking gazelles. Westphal also felt threatened by the comment.

Booker's conduct at the meeting was out of character for him. Accordingly, Westphal, along with members of human resources, called Booker into a meeting the following day, February 11, 2016. The purpose of the meeting simply was to find out whether everything was okay with Booker; it was not disciplinary in nature and no discipline ever ensued as a result of Booker's conduct at the February 10 meeting. During the course of this meeting, Booker became agitated and abruptly left the meeting and the workplace for the day.

He took paid time off for the remainder of that day, February 11, and the following day. Although Booker could have been assessed attendance points for abruptly leaving his shift on February 11, he was not. On February 12, while taking paid time off, Booker filed a charge of discrimination with the Equal Employment Opportunity Commission.

At a group meeting held on February 23, 2016, Booker apologized for the lion-and-gazelle comment. Booker remained employed at Johnsonville, and on Westphal's team, until he voluntarily terminated his employment on April 6, 2016.[1] Thereafter, Booker filed this lawsuit alleging race discrimination and retaliation.

**3.     DISCUSSION**

On the undisputed facts in the record, Plaintiff's claims for race discrimination and retaliation fail as a matter of law. Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of that person's race. 42 U.S.C. § 2000e–2(a)(1). It also prohibits any employer from retaliating against an employee because the employee has engaged in protected activity, including complaining about discrimination or harassment based on the categories enumerated in Title VII. *Id.* §§ 2000e-3(a), 12203(a). A *prima facie* case of discrimination or retaliation in the employment context generally requires (1) that the employee suffered an adverse employment action and (2) that the action

---

[1] In his submissions on summary judgment, and indeed throughout this litigation, Booker challenges other conduct occurring between February 2016 and the time of his separation from Johnsonville in April of that year. However, the Court did not permit Booker to amend his complaint to include those new allegations in the present suit, *see* (Docket #32), and so they are not relevant to the disposition of this matter.

was motivated by discriminatory or retaliatory animus. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169–70 (7th Cir. 1998).[2]

For Booker's retaliation claim, he must prove that retaliatory animus was the but-for cause of the adverse employment action, not merely a motivating factor. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016). For the race discrimination claim, however, showing that discrimination motivated Johnsonville's action to some degree is sufficient. *See Nassar*, 133 S. Ct. at 2526; 42 U.S.C. § 2000e-2(m). For either species of claim, under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), Johnsonville may offer legitimate, non-discriminatory reasons for its actions, which Booker must then rebut by showing that they are mere pretext masking unlawful motives, *Argyropoulos*, 539 F.3d at 736; *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

In the past, courts employed relatively rigid frameworks—seeking either "direct" or "indirect" kinds of proof—to discern whether impermissible motivations underlay the employer's action. The Seventh Circuit jettisoned that paradigm in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The inquiry has returned to its roots: namely, whether, considering all the available evidence, a reasonable juror could conclude that the adverse employment action the plaintiff suffered would

---

[2] A retaliation claim also requires that the plaintiff engage in some statutorily protected activity for which the employer then retaliates against him. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). Because the claim can be disposed of on other grounds, the Court need not evaluate this requirement in this case.

not have occurred in the absence of the plaintiff's protected status. *Id.* at 763–64; *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

Booker's claims fail because has not rebutted any of Johnsonville's proffered legitimate, non-discriminatory reasons for its purportedly discriminatory or retaliatory actions. Booker alleges that discrimination or retaliation motivated the following actions: (1) denial of the Front of the Line Operator position in favor of a Caucasian, including a suggestion that the "math" involved in the job would somehow be more difficult for an African-American; (2) Roska's assessing him attendance points; (3) Roska's refusal to train him; (4) Roska's use of the phrase "boy" in addressing him; and (5) being stigmatized as "an aggressive Black" and suspended without pay after the February 10, 2016 meeting. *See* (Docket #1).[3]

Booker's bare allegations that these actions were premised even in part on his race or protected activity are no substitute for actual evidence of the same. *See Anderson*, 477 U.S. at 248 (holding that in response to summary judgment, a party "'may not rest upon the mere allegations or denials of his pleading, but. . .must set forth specific facts showing that there is a genuine issue for trial'") (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Despite the liberal, totality-of-the-circumstances approach endorsed in *Ortiz*, there are simply no facts linking any of this conduct to discriminatory or retaliatory animus.

---

[3] The undisputed factual record contains no evidence that Booker was ever suspended without pay as a result of the February 2016 meeting. In fact, Booker has not properly challenged Johnsonville's assertion that the meeting was solely to evaluate Booker's well-being and was not disciplinary. The problem appears to be Booker's penchant for raising new complaints throughout this case as he sees fit. *See supra* note 1. However, to coherently address Booker's claims, the Court will assume that he was suspended at some point without pay. This assumption does not alter the ultimate result.

First, Booker has not challenged the fact that Daniels was better qualified for the Front of the Line Operator position because he had actual experience in that role. Second, Johnsonville's internal investigation revealed that Roska's assessing attendance points to Booker was justified and was not atypical from how other, Caucasian employees under Roska had been treated. Third, Roska has explained that it would have been a waste of company resources to train Booker during his lame-duck period in the smoking department prior to his move to PACK, as he would no longer need such training after the transfer. Fourth, there is insufficient evidence establishing that Roska ever actually called Booker "boy" in a discriminatory fashion, rather than saying "atta boy" in a congratulatory mode. Finally, assuming that Booker was in fact suspended without pay in February 2016, there is no evidence in the record regarding why this occurred, and certainly no evidence connecting it to his race or protected activity.

By disregarding his obligations under the Court's summary-judgment rules, Booker chose not to challenge Johnsonville's justifications for its actions. In so doing, he has failed to carry his burden to show that these reasons are mere pretext masking discrimination or retaliation. *Argyropoulos*, 539 F.3d at 736 (holding that courts "do not sit as a 'super personnel review board that second-guesses an employer's facially legitimate business decisions'") (quoting *Culver v. Gorman*, 416 F.3d 540, 547 (7th Cir. 2005)); *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 839 (7th Cir. 2009) (finding that pretext is "more than just faulty reasoning or mistaken

judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action"). As a result, Booker's claims must be dismissed.[4]

4. **CONCLUSION**

On factual record before the Court, which Booker failed to dispute, Booker's claims fail as a matter of law. As such, the case must be dismissed.[5]

---

[4]For the sake of completeness, the Court reviewed Booker's proposed statement of facts, *see* (Docket #42), to discern whether some pertinent material could be gleaned from it. The document is full of conclusory factual and legal assertions and is entirely unhelpful to Booker's case. For instance, Booker says that Roska denied him training and then states that "[r]ace discrimination in training is a violation of [Title VII]." (Docket #42 at 1). Booker assumes that the denial of training was premised on his race, but the whole point is that he must prove this. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991) ("[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion."). Likewise, Booker does no more than baldly state that Roska's use of the phrase "atta boy" was racially offensive, (Docket #42 at 1), when the undisputed facts demonstrate conclusively that it was never uttered with discriminatory animus.

The balance of the document is similar. It is also rife with allegations of discrimination that are unrelated or have never before been raised. *See supra* note 1; *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). The Court, having considered the document's contents, finds it unnecessary to address each argument made therein, as none of them displace the undisputed, non-discriminatory reasons for Johnsonville's actions.

[5]Because of the disposition of the motion for summary judgment—in particular Booker's failure to properly dispute Johnsonville's proffered facts—the Court can also dispose of the pending discovery-related motions.

First is Booker's motion to compel production of a document, called a "foursquare" writing assignment, he created with Westphal as part of a coaching exercise after he violated a work policy in December 2015. (Docket #31). He says it reflects his perceptions of racial discrimination at work. *See id.* Johnsonville reports that it no longer has a copy of the document, as Westphal did not regularly keep such materials. (Docket #39). It also claims that the document is not relevant, as this instance of discipline was never raised by Booker in his EEOC charge. *Id.* Booker did not file a reply in support of this motion, and so he offers nothing other than bare speculation that spoliation has occurred. The Court must, therefore, deny the motion to compel.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #34) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's request for sanctions (Docket #22) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel production of documents (Docket #31) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motions for protective order (Docket #33, #38) be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2017.

BY THE COURT:

J. P. Stadtmueller
U.S. District Court

---

Second, Booker filed two nearly identical motions for protective order relating to the videographer he employed for several depositions in this case. (Docket #33, #38). He accuses defense counsel of harassing the videographer in an attempt to obtain copies of the videos of the depositions. Johnsonville denies the allegations. (Docket #40). The Court need not address the matter further, as resolution of this dispute has no effect on the evidence considered in connection with Johnsonville's motion for summary judgment.

Finally, there is Johnsonville's request for sanctions in connection with Booker's alleged refusal to sit for a deposition. (Docket #22). While the Court does not condone Booker's failure to participate cooperatively in this litigation, in light of his *pro se* status and the pending dismissal of his claims with prejudice, there is no need for a separate award of attorney's fees to Johnsonville. *See* Fed. R. Civ. P. 37(d)(3). This case should not be further drawn out by such ancillary matters.